McGill vs. Somers & McKee.

McGILL, Plaintiff in error, vs. SOMERS & McKEE, Defendants in error.

1. A certificate of confirmation issued by the recorder under the act of 26th May, 1824, is only *prima facie* evidence of a confirmation under the act of the 13th of June, 1812—Biehler vs. Coonce, 9 Mo. Rep. 347; Macklot vs. Dubreuil, ib. 477; Boyce vs. Papin, 11 ib. 16.

2. The description list sent to the surveyor's office, by authority of the act, is evidence of as high a character as the certificate would be; and a properly euthenticated extract from it, is entitled to all the effect that the original certificate would have—Biehler vs. Coonce, 9 Mo. Rep. 343.

3. A survey made under the act of 29th April, 1816, when examined and sanctioned as contemplated by law, is conclusive upon the government, and upon all persons, who claim under titles subsequent to the survey; and, of course, whom mere intruders and strangers without title; and it is *prima facie* evidence of locality against all persons, who claim under an opposing title.

4. When two surveys conflict, the proper locality must be determined by the history of both claims. If it appears that the two titles, when properly located, cover the whole or part of the same land, the right must be determined, as a question of law, in favor of the superior title. If the titles are of the same age and description, and then no evidence to impeach the survey of either, the party in possession cannot be disturbed.

5. Surveys, covering the same land, may be correctly made, and the fact that confirmations embrace the same land, is no impeachment of the survey.

6. A confirmation under the first section of the act of 13th June, 1812, if of a common field lot, is superior to an opposing title, which stands alone upon a confirmation, under the act, of 29th April 1816. If under the first act the land be granted to one, it cannot, under the last, be granted to another.

7. A confirmation under the act of 1816, when properly surveyed, is superior to a New Madrid location.

8. Known and fixed boundaries and monuments, called for in a grant or deed, control the courses and distances stated in the same instrument.

## ERROR to St. Louis Circuit Court.

### Haight; for plaintiff in error.

1. It seems unnecessary in submitting a brief in this case to do more than state the points decided. The decision is so grossly wrong that argument would be wasted. The court decided in refusing the first instruction. That the confirmation to Cottard, and the survey and location under it, did not vest the title to the premises in Cottard of the survey and location were correctly made.

2. The court decided, that if a part of the land confirmed to Cottard was within the survey to Motard, or within the commons, and the land in controversy in this suit was not embraced in either survey, the defendants would be entitled to a verdict.

McGill vs. Somers & McKee.

3 That the title of the representatives of Joachim Roy was a better title than the confirmation to Cottard.

4. That monuments and visible boundaries do not control course and distance.

5. That the commons title and the Motard confirmation would both be set up as outstanding titles, though neither included the premises in question.

6. That the claim of Adams, and the confirmation to him under Motard was an out lot.

7. If the court found the facts to be that no claim had ever been made by Adams to the land in controversy, and that he had accepted a survey and confirmation excluding it, the title of lands would be a bar to the plaintiff in this suit.

Other points not less absurd were decided, but these are deemed sufficient for the present purpose.

SPALDING, for defendant in error.

1. The plaintiff's first instruction was refused and the court was justified in the refusal of it.

First, because there was evidence that Motard's land was a common field lot, and in cultivation prior to 3d December, 1803, was proved on the trial. The concession or claim was seven by forty arpents, and was protected by the common field fence upon which it bounded.

2. The second instruction of plaintiff was rightly refused.

First. It is calculated to mislead the jury.

Second. The fact that Cottard's survey was in part embraced in the survey of commons and in that of Motard's may be a conclusive reason why the jury should find for defndant. This depends on the location of the different tracts.

3. The third instruction for plaintiff refused by the court is erroneous. First, because the certificate and evidence, under which the survey was made to Joachim Roy, establishes a confirmation to him :9 Mo. Rep. 347, Biehler et. al. vs. Coonce. The tabular statement from the book' of the recorder of land titles showing confirmation of a lot, size, &c., is evidence. This was of an entry by Hunt, the recorder, acting under the act of Congress of 26th May, 1824. 4 United States statutes 65 as to the duty of the recorder of land titles in taking proof of possession, &c. 3 United States statutes 325, act of 29th April, 1816, to provide for appointment of surveyor, &c. It directs how to cause all lands to be surveyed &c,, the "claims to which have been, or hereafter may be confirmed by any act of Congress which have not been already surveyed according to law." 9 Mis. Rep. 477, Macklot vs. Dubreuel; at page 489 the court hold that a certificate issued in August, 1842, by the recorder of land titles on the proof by Hunt, is valid, and evidence of confirmation under act of 13th June, 1812. 11 Mis. Rep. 16, Royce vs. Papin, at page 24 the court say that the recorder had power to confer town lots, and his acts are evidence of confirmation as full as his certificate under act of 1824. The first instruction given for defendant involves the same question.

4. The fourth instruction asked by plaintiff, lays down certain principles, as to location of land, which if even abstractly right do not belong to the case. The question, or at least one question was whether the Cottard claim had been surveyed at the right place. This did not depend upon monuments and visible boundaries, but upon calls as to other lots and claims.

5. The plaintiff's 5th instruction was not needed in the case. No pretence was set up on behalf of the defendant, that the confirmation of the boundaries or of Motard's claim was an outstanding title to the premises in dispute, lying entirely without the limits of each of them. There was no dispute—no conflicting testimony, even as to the fact that the price of land in dispute in this action, that is, possessed by the defendant, lay entirely outside of both of those confirmations.

6. The 6th instruction asked by plaintiff, is objectionable for taking away from the jury, the consideration of all matters of fact tending to show that there was an outstanding title to the same premises; and also tending to show that Cottard's claim was located in the wrong place.

7. The 7th of the plaintiff's instructions, suggests that if certain facts existed, then the con-

cession of Cottard was confirmed, but does not state to whom. The testimony shows that perhaps Cottard cultivated there, and also shows that he was not cultivating in his own right, but for Motard; at least, there was evidence to that effect, what use then in stating to the Jury that the act of 13th June, 1812 confirmed the lot, and stopping there, and not stating to whom?

9. The 9th of plaintiff's instructions is an argument to the jury, and that the jury did not believe it is not matter of exception in law.

But if it be viewed as an instruction, that is, a proposition of law, to govern the triers of the fact in finding a verdict, it is erroneous in declining positively, that the Motard claim was not a common field lot. Whether it was a common field lot depended on certain matters in pais which the jury was to find from the evidence, and which the court could not know as a matter of law.

10. The 10th of plaintiff's instructions is liable to the same objections as the foregoing one. It also assumes that the Motard claim (called the claim of Adams) excludes the land in controversy in this suit. It assumes also that Adams and those claiming under him, the representatives of Motard never claimed the land confirmed to Cottard; whereas, if the land confirmed to Cottard is that which is within, or is embraced by his survey, given in evidence, then it is chiefly within the Motard claim; and was, and is claimed by Motard's representatives.

The 2nd instruction given for defendant assumes as a legal proposition, that upon the facts given in evidence the jury were to judge whether the Cottard claim was properly located by the survey of it, within the survey of the commons, and also within the survey of the Motard claim.

The jury were to determine upon all the evidence whether the survey of the Cottard claim, should have been made so as to interfere with Motard. If it were to be made at another place, it would not have included the spot in dispute.

The 4th instruction of defendant involves the same point.

The 3rd instruction of defendant asks the court to state to the jury that the survey of the commons is prima facie correct, and is to be so presumed against this later one of Cottard.

§. 11 Mis. Rep. 16; Boyce vs. Papin at p. 24-5, the court hold; the government survey prima facie evidence of location.

9 Mis Rep. 69; Trotter vs. Public Schools, to the same purport.

4 Howard; Les Bois vs. Brannel, p. 464—that the confirmation of 1812 and the official survey, located the commons title as effectually as a patent.

The United States had passed the title of the commons to the town of St. Louis, and had then, surveyed and designed the limits thereof, during the time that they owned or claimed the land, covered by the Motard survey, so far as the claim was not owned by the city as commons. Cottard, claiming by subsequent location, must submit to that presumption existing against him arising from the previous acts of the government.

The 5th instruction of defendant asks the court to say, that the survey of the Joachim Roy claim is to be presumed correct prima facie.

The 6th instruction is, that if Cottard is within the Chouteau mill tract, except so much of it as lies west thereof, then it is erroneous, and there can be no recovery in this action.

The 7th of defendants instructions is, that if Motard's tract was a common field lot cultivated prior to 20th December, 1803, by him, that it was confirmed by the act of 1812, and is a title prior in time and previous to that of Cottard.

The 8th instruction of defendant is, that if the common field lot, claimed by Cottard, was possessed and cultivated by Adams, prior to 20th December, 1803, and he Adams, was the las possessor and cultivator, before the change of government, then that the act of 1812 confirmed the same to him Adams (who was assignee of Motard,) and the subsequent confirmation to Cottard by the recorder, passed no title.

11 Mis. Rep. 183; Page vs. Schiebel: "Many of these lots had been inhabited or cultivated by different persons at different periods of time, and Congress did not design to give these lots to the original or first occupant, but to those who had been in last possession prior to the passage of the act, &c. (See Prim. and Salle, 3 Mis. Rep. 529.)

As to the presumption arising from the lapse of time as to surveys of government, acquiescence in them strengthens the presumption of correctness, and after a lapse of time, can't say how long, the survey should not be disturbed.

The land cultivated by Cottard in partnership with Motard, north of Motard, was cultivated bʎ Motard after Cottard left; and after him Adams cultivated it, who was grantee of Motard; he cultivated then before 20th December, 1803.

Motard sold to Adams before change of government, and thus showed that he claimed adversely to Cottard, and of course his cultivation was for himself; and so was that of Adams; and therefore the act of June 13th, 1812, confirmed to Adams (the last cultivator under the Spanish government,) said lands.

GAMBLE, J., delivered the opinion of the court.

The plaintiff, McGill, claims the land in controversy, under a confirmation by the act of Congress of 29th April, 1816, to Francis Cottard, and a survey under the confirmation. The defendant's claim title under the location of a New Madrid certificate, in the name of James T. O'Carral, or his legal representatives. They also set up, as an outstanding title, a confirmation to Joachim Roy's representatives, and a survey under it, conveying the land in controversy. The evidence to establish Roy's title, consists of extracts from the minutes kept by the recorder of land titles when taking proof under the act of Congress of the 26th May, 1824, and an extract from the list of claims proven before him, which was sent to the office of the surveyor general as required by the act. The defendants also exhibited the titles of Augusta Chouteau, of Joseph Motard and of the commons of the town of St. Louis. The surveys of these claims embraced nearly all the land surveyed under the Cottard confirmation, but this suit is brought to recover land not included in either of the three last mentioned claims. Roy's survey is the only one established by the defendant, except that of the New Madrid claim which includes the land in controversy.

The defendants allege that Cottard's survey is made at the wrong place, and use the claims that conflict with it, as evidence of its improper location.

At the request of the defendants the court below gave the following instructions:

1. If the land sued for in this action lies within the claim confirmed to Joachim Roy as said claim is shown by transcripts produced from recorder Hunt's proceedings and list sent to the surveyor's office, then there can be no recovery in this action.

2. That if the jury find from the evidence that the Cottard claim and confirmation have been improperly located and surveyed, and, that if properly located, it would not include the land in controversy in this suit, they will find for the defendant.

3. That the survey of the St. Louis commons, given in evidence in

this case by defendants, is to be presumed to be correct, and to be the true boundary thereof, unless it is proved otherwise, and that if the Cottard claim is located so as chiefly to be within the land confirmed to the "inhabitants of the city as commons" then such location is an erroneous location.

4. That the survey of the Cottard claim given in evidence is not conclusive; but that the jury are to judge from all the circumstances, as to the propriety of such location; and if they believe from the evidence that it is located and surveyed in the wrong place, they will find for the defendant.

5. That the location and survey of the Joachim Roy claim, is presumed to be correct, until the contrary be shown; and the jury are bound to consider it a correct survey, unless its correctness be disproved.

6. If the common field lot confirmed to Cottard lies wholly within the survey of the Chouteau mill tract, as made by Brown or Paul, except so much of it as extends farther west than the west line of said mill tract, then there can be no recovery in this action.

7. If the jury believe from the evidence that the land of Motard, cultivated by him at Cul-de-Sac was a common field lot, and that the same was possessed and cultivated by him, under the Spanish government till he sold to Lee, and that Lee and Adams, or one of them, continued to cultivate and possess it, till after the change of government, the said land was confirmed to Motard or his representatives by the act of the 13th June 1812, and the title thereof is older in point of time, and paramount to that of Cottard, if they conflict with each other.

8. If the jury find from the evidence that the common field lot claimed in Cottard's name was passed and cultivated by Adams prior to 20th December, 1803 and that he was the last cultivator and possessor of the same before the change of government, then the act of 13th June 1812, confirmed the same to him, and the subsequent confirmation to Cottard by the recorder, is inoperative and passed no title.

The plaintiff asked the court to give the following instructions, which the court refused:

1. The confirmation to Francis Cottard, given in evidence, and the survey and location given in evidence, under the authority of the United States, vested the land in controversy in the said Francis Cottard as against the title under which the defendant's claim, unless the jury believe from the evidence in the case that the survey and location, given in evidence are entirely erroneous and that the land confirmed to Cottard is other and different from the land so surveyed and located.

2. If the jury believe from the evidence, that a part of the land confirmed to Cottard is within the survey to Motard, or within the commons, or within both as confirmed and surveyed under the several acts of congress, this will not entitle the defendants to a verdict in this case, if the jury believe the land in question, in this suit, is not embraced either in the Motard survey or survey of the commons.

3. The certificate and evidence, under which a survey has been made to Joachim Roy is not a confirmation in the sense of a grant by the United States, and if it was, in case of any conflict between that and the confirmation to Francis Cottard, the latter will be preferred, being the older title; that is, the confirmation to Cottard, if the land has been correctly surveyed, as described in the official survey, is the better title.

4. In ascertaining the location of a grant, monuments and visable boundaries in the grants, and surveys will control courses and distances and when they disagree the line must be run according to the visible boundaries given, though it should disagree with the courses and distance as ascertained by the surveys made since the grant or deed.

5. If the jury believe from the evidence, that the premises in question in this suit are not within the St. Louis commons as surveyed, and are not within the survey of the confirmation to Motard's representatives, then, neither of these can be set up by the defendants as outstanding titles to defeat the plaintiff's recovery, claiming to be representatives of Cottard.

6. If the jury believe from the evidence, that the concession to Cottard was duly executed, and that his will, given in evidence, was duly made and published, and that the deed from Etienne Roussin was duly executed to Albert Tison, and that said Albert Tison is dead, and the plaintiffs are his heirs at law, and that the land confirmed to said Cottard by act of congress of 29th April, 1816, included the premises in question, they will find for the plaintiffs.

7. If the land conceded to Cottard was a common field lot, adjoining the common fields of the Cul-de-Sac, and the concession was duly executed at or about the time it purported to have been, and that the land in said concession was cultivated, inhabited and possessed by said Cottard prior to 20th December, 1803, then the same was confirmed by the act of congress of 13th June, 1812.

8. If the jury believe from the evidence that a part of the land confirmed to Cottard within the survey to Motard, within the commons or within both, as confirmed and surveyed under the several acts of congress, this will not entitle the defendants to a verdict in this case, if the court sitting as a jury, find that the survey and location to Cottard is

---

McGill vs. Somers & McKee.

---

correctly made, under the confirmation to said Cottard, and that the land sued for is within said confirmation and survey and outside the survey of the commons and the claim of Motard.

9. Under the proof in this cause, the court sitting as a jury and finding the law and fact, is required to decide that the claim of Adams and the confirmation thereon is not a common field lot or out lot, within the meaning of the act of 13th June 1812.

10. The court, sitting as a jury, should find, that no claim having been made by Calvin Adams to the land confirmed to Cottard, and said Adams, and those claiming under him, accepted a confirmation and survey excluding the land in controversy in this suit, and no claim having ever been made under said Adams, to those claiming under him to said land, then the title acquired by said Adams and given in evidence in this case, is not a bar to the recovery of the land claimed in this cause.

The first instruction given by the court, makes the action of the recorder upon the claim of Roy's representatives conclusive against the plaintiff as an outstanding and superior title.

The act of 26th May, 1824, required the owners of town lots, out lots, and common field lots which had been confirmed by the first section of the act of 13th June, 1812, to appear before the recorder and prove the extent and boundaries of the lots so confirmed, the recorder was required to submit a list of the claims so proved, to the surveyor general, and another copy of the list to the general land office and to give a certificate of confirmation to the owner.

The evidence in this case consisted of extracts from the recorder's minutes and from the list sent to the surveyor. The certificate was not produced.

The court did not leave to the jury the question of fact, whether the land in controversy was embraced in the tract confirmed to Roy by the act of 1812, but informed them "that if it was embraced in the claim confirmed, as shown by the transcripts produced from the recorder's proceedings, and the list sent to the surveyor's office, then the plaintiff cannot recover." The effect thus given to the acts of the recorder, is to make them conclusive of all questions of title and locality under the act of 1812. A reference to the different cases decided by this court, will show that this instruction of the circuit court goes far beyond them, in the effect given to this evidence. The cases, from Janis vs. Gumo, 4 Mo. R., 458, to the present time, have maintained that the certificate of confirmation issued by the recorder under the act of 26th May 1824, is only *prima facie* evidence of a confirmation by the act of 13th June, 1812: Biehler vs. Coonce, 9 Mo. R., 347; Macklot vs. Dubreuil, 9 Mo.

R., 477; Boyce vs. Papin, 11 Mo. R., 16. In the case of Biehler vs. Coonce, the court expressed an opinion upon the admissibility of the extracts from the recorder's books and gave to them the same effect as to a certificate issued to the party. The descriptive list sent to the surveyor's office, under the command of the act is evidence of as high a character as the certificate would be, and a properly authenticated extract from it, is entitled to all the effect that the original certificate would have. Still the instruction is erroneous, for it makes the evidence conclusive against a person claiming the same land by a confirmation under the act of 1816, and a survey under such confirmation. If Roy was entitled to the land by a confirmation under the first section of the act of 1812, his title is superior to the confirmation under which the plaintiff claims, but the plaintiff is entitled to dispute the fact that it was so confirmed to Roy.

Several of the instructions given, involve the question, how far the surveys made under the authority of the United States are evidence of the true location of the claims surveyed.

The government has provided, from the time of its first action upon land claims in Missouri, for surveys to be made by its own officers; and by the first section of the act of 29th April, 1816, providing for the appointment of a surveyor in Illinois and Missouri, it is made his duty "to cause to be surveyed all lands the claims to which have been or may be hereafter confirmed by any act of Congress which have not already been surveyed according to law:" 3 Statutes at large 325.

Surveys of these claims are alike necessary to the claimants and the government. To the claimants in order that they may have the boundaries of their land defined, and to the government that the lands may be ascertained which are subject to disposition under its laws. The acts of Congress thus imposing the duty upon the officer, acknowledge the right, of every person having such claim, to have his land surveyed. When the survey is made and passes through the examination and receives the sanction contemplated by law, it is conclusive upon the government. It is in like manner conclusive upon all persons who claim title to the land, under titles originating subsequently to the survey; and it is of course conclusive upon all mere intruders and strangers without title to the land. It is prima facia evidence of locality. against all persons who claim under an opposing title; for, to make it less would be to deny to the claimant the right to have his land designated and set off to him, which the laws have always conferred. If there is a conflict with another title, it must be with a claim having its locality ascertained by another survey, and when two surveys thus conflict, the question

of the proper locality of such, is to be determined by evidence running back through the whole history of both claims. If it appears, when all the evidence is presented that the two titles when properly located, cover the whole or part of the same land, then the right will be determined as a question of law, in favor of the party whose title, by its character and age, is the superior title. If the titles are of the same age and description, and there is no evidence to impeach the correctness of the survey of either, then the defendant, being in possession, cannot be disturbed.

It is a great error to suppose that two surveys may not be correctly made to cover the same land. The history of land claims in this vicinity, abundantly proves that the same land has been included in different grants from the Spanish government, and that confirmations have been made, under the United States, to different individuals, which cover the same land. The fact then, that confirmations are represented by surveys to embrace the same land, is no impeachment of the correctness of the survey. When therefore the court told the jury in this case, by the third instruction, "that the survey of the St. Louis commons, given in evidence by the defendant, is to be presumed to be correct, and to be the true boundary thereof, unless it is proved otherwise; and that if the Cottard claim is located so as to lie chiefly within the tract confirmed to the inhabitants of the city, as commons, then such location is an erroneous location," an error was committed in stating the consequences of such conflict between the surveys. And so the 6th instruction, which declares that the interference of the Cottard claim with the survey of the Chouteau mill tract, is conclusive evidence of error in the location of the Cottard claim, is equally erroneous.

It is not necessary in the present state of the law, as settled by judicial decissions, to employ argument in support of the position, that a confirmation by the first section of the act of 13th June, 1812, if a common field lot, is superior to an opposing title which stands alone upon the confirmation by the act of 29th April, 1816.

If the act of 1812 gave the land to one person, the act of 1816 would not give it to another. The 7th and 8th instructions were therefore properly given.

There are several of the ten instructions asked by the plaintiff and refused by the court, which will need no comment, as upon a future trial of the case the principles already declared as to the effect of surveys will furnish a sufficient guide to the circuit court.

In regard to the first instruction asked by the defendant, it is only necessary to say, that if the plaintiff's claim, under a confirmation by

the act of 1816, when surveyed in its proper place conflicts with a New Madrid location, that the confirmation is the better title.

The fourth instruction declares the effect of monuments and visible boundaries as controlling course and distance in the location of a grant. It has so often been declared, that known and fixed monuments, called for in a grant or deed, will control the courses and distances stated in the same instrument, that it is not necessary to refer to authorities upon the point. It is believed that in most if not all the states the law has been thus settled. As the instruction does not apply the principle to the calls of any grant or deed which was in evidence before the jury, it is impossible for this court to determine whether the instruction was rightly refused or not. It sufficiently appears from what has been said that the circuit court has erred in the instructions given to the jury, and therefore with the concurrence of the other judges the judgment is reversed and the cause remanded, for further proceeding according to this opinion.