JOYAL, Respondent, vs. RIPPEY, Appellant.

1. It is settled that a certificate by recorder Hunt, under the act of 1824, is *prima facie* evidence of a confirmation by the act of 1812, and that an official survey is *prima facie* evidence of the true location of the land confirmed.
2. It is no impeachment of a survey, of a confirmation by the recorder of land titles under the act of 1824, that it includes less than the quantity claimed before the recorder. So, the mere fact that there is not enough land in a block to satisfy all the claims proved before the recorder, does not show that a survey of one of the lots, including less than the quantity claimed, is erroneous, or that the surveys of the other lots, including the full quantity claimed, are erroneous.

*Appeal from St. Louis Court of Common Pleas.*

This was an action brought by Theresé Joyal in 1851, to recover ten feet of ground fronting on Third street, in block 55 of the city of St. Louis, in the possession of Matthew Rippey. The plaintiff claimed the ground by devise from her husband, Joseph Joyal, as a part of a lot of sixty feet, French measure, in front, by one hundred and fifty feet in depth, confirmed to him by the act of congress of June 13, 1812. The defendant denied that the ground in dispute was within the lot confirmed to Joyal by the act of 1812, and averred that it was included in a lot of 120 feet front by 150 feet deep, French measure, inhabited, cultivated and possessed by Nicholas Beaugenon, prior to December 20, 1803. The answer set out a chain of title from Beaugenon to the defendant, as one link of which, a deed from the widow Charleville to Pierre Chouteau was mentioned.

At the trial, the plaintiff read in evidence a certificate of confirmation from Theodore Hunt to Joseph Joyal, dated April 15, 1825, of a lot of 60 feet front on Third street, by 150 feet deep, French measure, and a United States survey thereof, which includes the land in controversy. By the survey, the lot is described as 60 feet 4 inches in front, on Third street, by 60 feet 6½ inches in width, in the rear, bounded west by Third street, north by lot of Ralph Davis, south by Joseph Quenel, and east by Bouché under Quenel. Antoine Smith, a witness for the plaintiff, gave evidence tending to show that Joyal was in possession of an inclosed lot, including the ground in controversy, for more than twenty years before 1840, and that, about that time, the defendant removed the division fence further north, so as to include the ground in dispute within his lot, and that this was done against the consent of Joyal, who shortly afterwards died. This witness also testified that Joyal bought the lot of La Riviere, who bought it of Rousseau *dit* La Bouté, who obtained it from the widow Charleville by an exchange. The will of Joyal, devising the lot to the plaintiff, was read in evidence.

The defendant gave no evidence of the possession of Beaugenon prior to December 20, 1803. He read a deed from Beaugenon to the widow Charleville, and other deeds referred to in his answer, but the deed from widow Charleville to Chouteau does not appear in the record. He then read from the registry of Recorder Hunt a confirmation to Ralph Davis' legal representatives of a lot of 120 feet front, by 300 feet deep, French measure, described as bounded east by Second street, west by Third street, north by south D. street, and south by balance of square. No survey of this confirmation was given in evidence. A certificate of confirmation, dated January 7, 1842, from F. R. Conway to Joseph Quenel's legal representatives, of a lot included in Hunt's list, was next given in evidence. This certificate described the lot as 60 feet front on Second street, by 300 feet deep to Third street, French measure, but referred for a more particular description to an ac-

companying United States survey thereof, which described it as 54 feet 10½ inches front on Third street, by 61 feet 2 inches on Second street, bounded north by Joyal and Bouché under Quenel, and south by Almond street. This survey did not include the ground in dispute. The confirmation to Bouché, under Quenel, if any, was not in evidence. There was evidence tending to show that there was not sufficient land in the block to satisfy the calls of all the claims before the recorder for front on Third street, by some ten or twelve feet. There was evidence tending to show that Joyal and Rippey, in 1839, agreed upon a division line, nearly, if not quite, corresponding with the present possession of the parties, and evidence to the contrary.

The court gave the following instructions :

1. If Joyal did not agree to the line claimed by the defendant as the division line, or if he did not assent to, or acquiesce therein, or if Rippey did not use, possess and occupy according to said line, without disturbance or opposition from Joyal and his legal representatives, then the plaintiff is not estopped from claiming south of said line. To make said line conclusive between the parties, Rippey must have used and occupied according to it, without disturbance or opposition from Joyal and his representatives, long enough to show that Joyal and his representatives knew where the line so agreed upon was, and that they acquiesced in it as the settled division line between them and the defendant.

2. The certificate of confirmation, offered in evidence by the plaintiff, is *prima facie* evidence that the land therein named was confirmed by the act of June 13, 1812, and the United States survey, No. 3213, is *prima facie* evidence of the true location and boundaries of the tract confirmed. If the jury believe from the evidence, that the defendant was in possession of any portion of the tract included in said survey, at the commencement of this suit, and that the plaintiff is the Aglæ Joyal mentioned in Joseph Joyal's will, they will find for the plaintiff, unless the defendant has proved to their satisfaction

that the said survey did not correctly locate said tract, as cultivated, inhabited or possessed prior to December 20th, 1803, and that the true location would not include any part of the land in possession of the defendant at the commencement of this suit.

3. If the jury believe from the evidence, that Joyal and Rippey mutually agreed upon the division line between them, and that, according to said division line, the parties used and possessed and occupied their respective lots, with the assent and acquiescence of each other, or that the defendant used and occupied up to said division line, with the acquiescence of, and without disturbance from Joyal and his representatives, for many years after said alleged agreement, then the plaintiff cannot recover any land south of the line so agreed upon as the division line.

4. If the jury find that the plaintiff is the widow of Joseph Joyal, and the same person as Aglæ Joyal, named in the will of said Joseph, and that said Joseph and those under whom he claimed, were in possession of the property in dispute for more than twenty years before Rippey took possession thereof, they will find for the plaintiff.

5. The defendant admits by his answer that he took possession and now holds possession of ten feet in front by 150 feet in depth, and defendant is estopped from showing any thing contrary to and conflicting with his answer.

The court refused to give the following instruction, asked by the defendant:

"The jury are to ascertain from the evidence the true location of the premises claimed by the parties respectively, and if they find that there is a deficiency of land in the block to satisfy all the confirmations of the same date, the four lots in the block should be equally divided, and one given to each of the parties in this case, if the jury find that there has not been any agreement as to lines, as stated in prior instructions, and no adverse possession for twenty years, as also stated in previous instructions. In other words, if the survey was now to

be made, independent of these circumstances, such would be the correct rule."

After a verdict and judgment for the plaintiff, the defendant appealed.

*J. R. Shepley*, for appellant, argued that the instruction refused should have been given. The court had previously declared that the survey was only *prima facie* evidence of location, and now it was asked to say what was the correct principle to be applied in surveying the lots, when there was not sufficient ground to satisfy all. The principle contained in the instruction is belived to be the correct one. The titles all had an equal standing, and there was no reason why one should get the full quantity of his claim, as proved up before the recorder, any more than another.

*C. Gibson* and *B. Bates*, for respondent. The certificate was *prima facie* evidence of a confirmation to Joyal by the act of 1812, and the survey was *prima facie* evidence of the true location of the lot confirmed. The surveys had fixed the bounds of the lots, and the principle of the instruction could only apply to the making of the surveys. The rights of the parties were to be determined by a comparison of their titles, without regard to the titles to other portions of the block. The defendant showed no title under any confirmation, and was not in a position to interfere in the division of the block into lots. Again, the defendant, having taken forcible possession of the ground in dispute, cannot set up a merely equitable principle (if it be one at all) in his defence. Let him restore the possession before he asks equity.

GAMBLE, Judge, delivered the opinion of the court.

The answer of the defendant alleges that the ground in controversy was included in a lot of 120 feet in front by 150 feet in depth, French measure, which was inhabited, cultivated and possessed prior to the 20th December, 1803, by Nicholas Beaugenon, having its front on Third street, and bounded on the south by Almond street. Of this possession, no evidence is

given, and there does not appear to have been any action before the recorder of land titles under the act of 1824, to prove the extent and boundaries of such possession. In the answer, the defendant sets up, as part of his title, a deed from widow Charleville to Pierre Chouteau, and in the evidence, an exchange between widow Charleville and Rousseau *dit* La Bouté is mentioned, but neither of these deeds is on the record. We must take the case as we find it, and decide it as the parties have prepared their record.

The certificate of confirmation, in favor of Joyal, and the United States survey, under the confirmation, are admitted to include the premises in controversy, and make out a *prima facie* case in favor of the plaintiff, with the will of Joyal, devising the property to the plaintiff. This is resisted by giving in evidence the certificate of confirmation in favor of Quenel's representatives, and the survey under it. The defendant did not claim under Quenel by any title set out in the case, but made it the basis of the instruction which he asked, and which presents the only question argued by his counsel. That instruction declares the law to be that, if there was a deficiency of land in the block to satisfy all the confirmations of the same date, the four lots in the block should be divided equally, and one given to each of the parties in the case, unless there was an agreement as to lines, or an adverse possession of twenty years controlling the division. Such is the substance of the instruction asked by the defendant and refused by the court.

It is to be remembered that the certificates of confirmation, issued by the recorder, under the act of 1824, do not, in themselves, profess to be documents transmitting title. They are received in court as *prima facie* evidence that the lot described was cultivated or possessed prior to the 20th December 1803, and was confirmed to the claimant by the act of June 13th, 1812. *McGill* v. *Somers & McKee*, 15 Mo. 86. So the surveys made under the reports and lists of the recorder, returned to the surveyor general as directed by the act of 1824, are *prima facie* evidence of the true location of the lot as

possessed prior to the 20th December, 1803, and confirmed by the act of 1812. If there should be a conflict between the certificates and surveys of two contiguous lots, the parties would be remitted to the proof of their possession prior to December, 1803, and by evidence going back behind the proceeding of the recorder, it would be determined what land was confirmed by the act of 1812 to each. The surveys in the present case do not conflict, for they call for each other, and the line between the lots is established by them, so far as the surveys of the United States could have that effect. It is true that the proceeding before the recorder, in relation to the claim of Quenel's representatives, is for a lot of sixty feet in front by three hundred feet in depth, and that the survey which forms a part of the certificate of confirmation, gives a front of sixty feet and two inches on Second street, and only fifty-four feet ten and a half inches on Third street. But as there was no evidence in the case of the actual possession, prior to the 20th December, 1803, nor of the nature and extent of the original claim, it is impossible to say that the survey is erroneous because it does not contain the quantity claimed before the recorder. Suppose the case that the actual ancient possession had encroached upon the street, which was the southern boundary of the lot, to the extent of the present alleged deficiency, could the party claim that, when the street was surveyed, so as to include a part of the possession, his lot should be projected the same distance to the north upon the contiguous lot of his neighbor? Undoubtedly not. This is mentioned merely to show that the survey may be correct when the party fails to get the quantity he claimed; and so it will follow that the mere fact that there is a deficiency of land in the block, when its limits are accurately ascertained, to satisfy all the claims asserted and proved before the recorder, does not show that the survey of the Quenel lot, giving to it less than the sixty feet front, on both streets, is an erroneous survey, or that the surveys of the other lots in the block, by which they get their quantity, are erroneous.

As the certificates of the recorder, and his proceedings under

the act of 1824, do not originate titles, we must have the evidence of the original claims and possessions before us, before we can declare that all the surveys in a block are erroneous, because one of the parties has a smaller quantity surveyed for him than he claimed before the recorder. The instruction asked by the defendant was substantially an instruction that all the surveys in the block were incorrect, and the only ground for such declaration was, that the Quenel lot was smaller, as surveyed, than the quantity claimed before the recorder, and there was a deficiency in the block to satisfy all the claims made before that officer. Upon the state of the evidence, the instruction was properly refused.

The instructions given by the court, upon the effect of the certificates of confirmation and surveys, and upon the effect of an agreement between the parties, in relation to the division line between them, were correct, according to previous decisions of this court. So, also, the instruction in relation to Joyal's possession of the ground for twenty years previous to the ouster by the defendant, was correct.

The judgment will be affirmed.