W. A. ROBBINS *et als.*, Plaintiffs in Error, *v.* HENRY ECKLER *et als.*, Defendants in Error.

1. *Confirmation—Commons—Survey—Title.*—The act of Congress of June 13, 1812, confirming to the inhabitants of the village of St. Charles their commons, together with an approved official survey by authority of the United States, are equivalent to a patent of the tract of land surveyed as commons; but no such effect can be given to the survey of the commons made by Antoine Soulard, March 2, 1804. The act of Congress did not purport nor intend to confirm claims to commons which existed on March 2, 1804, but only such as existed in fact prior to Dec. 20, 1803. In the absence of any official survey by the United States, the only way in which a title to commons under the act of June 13, 1812, can be shown, is by proof of some grant, concession, survey or actual possession, claim or user of some definite tract of land as commons prior to the 20th Dec., 1803. Without such evidence, there can be no title to commons under that act where no official survey is shown.

2. *Confirmation—Out-boundary Survey—Evidence.*—The out-boundary survey

of a town, including the town with its common-field lots, out-lots, and commons, is no evidence of the location, extent and boundary of the commons, nor of any private lot marked on the plat.

3. *Ejectment—Confirmation—Title.*—A plaintiff in ejectment who shows no title in himself cannot be permitted to controvert the *prima facie* title of the defendant under a confirmation and official survey by the United States.

## *Error to the St. Charles Circuit Court.*

This was an ejectment to recover possession of so much of lots 14 and 20 of block 4 of Evans' survey of St. Charles commons as conflicted with United States survey No. 164 of an out-lot or common-field lot, in the *cul de sac* common fields, confirmed to Auguste Chouteau under J. B. Lacroix.

The plaintiffs claimed title under the Town of St. Charles, by virtue of a lease executed Mar. 5, 1856, of a part of the commons of said town in renewal of leases surrendered.

. The defendants denied that the lease under which plaintiffs claimed covered the land in controversy, and also claimed title under the confirmation and survey to Chouteau.

The plaintiffs presented in evidence the claim of the Town of St. Charles to commons presented to the old board of commissioners and Soulard's survey of said commons certified March, 1804. On this survey of Soulard's, the *cul de sac* fields which are in the commons have a different direction from that given them in the United States survey of said fields and commons.

In 1817, Evans made a survey of the lands at St. Charles and sectionized them, connecting his surveys with the *cul de sac* fields, giving them the same location afterwards given them by Brown when he surveyed the commons and common fields. The out-boundary survey of the village with its commons and common-fields was in evidence. The survey of the commons made in 1844 was called for by the instructions, but did not appear in the record. This survey (the official government survey) differs from that of Soulard and includes more land.

To prove the acquiescence of the town in Brown's official survey, the defendants offered in evidence the official pro-

ceedings of the Town of St. Charles, from 1844 to 1855, in relation to said survey of commons, showing that they directed Brown to be supplied with information for making his survey; that they applied for plats of said survey; that they directed the plat to be filed as the official plat of said commons; that they directed portions of said commons to be subdivided, and lots to be sold, in accordance with said plat; that they subdivided and sold parts of the lands included in said survey and not included in Soulard's survey.

The plaintiffs, in making out their case, offered in evidence the claim of Chouteau under J. B. Lacroix as presented to the old board, and the claims as presented and proved before Recorder Hunt. The old board rejected the claim, but Hunt confirmed the same, under the act of 1812, as an out-lot in the *cul de sac* common fields.

An official survey of the claim was made in 1844, at the same time the commons were surveyed by Brown; and the Recorder of land titles issued a confirmation certificate with a copy of the official survey No. 164, made according to possession and the claim.

Part only of the lines of the Lacroix claim had been run by the survey made July 10, 1796, which survey says the tract contains 324 arpens; Chouteau's claim before Hunt called for 300 arpens, more or less. The defendants proved actual possession of the lot prior to Dec. 20, 1803.

Evans' survey of block 4 had been lost. In 1833, T. W. Cunningham, by direction of the town, undertook to retrace Evans' lines, some of which he found, and some he did not find; he made a plat which he thought conformed to Evans' plat. By his survey, lots 14 and 20 of block 4 conflict with U. S. survey No. 164, of the lot confirmed to Chouteau, and the *cul de sac* common fields.

The defendants offered testimony to show that Cunningham's survey of block 4 did not correspond with Evans', commencing at different points, and showing also that in 1838 he made a survey and subdivision of survey 164, which showed no interference of the subdivisions of block 4. De-

fendants denied that Evans' survey of block 4 interfered with the *cul de sac* common fields and survey 164. Survey No. 164 was of a common-field lot, of 9 arpens front and rear by 36 deep ; the plaintiffs contended that it was only one arpent in the front by nine in the rear, and 36 arpens deep.

The plaintiffs asked nineteen instructions, all of which, except that relating to the rents and profits, were refused. ·

The defendants asked five instructions, which were given, and thereupon the plaintiffs took a non-suit with leave, &c.; and their motion to set aside non-suit being overruled, they took up the case by appeal.

*T. W. Cunningham* and *E. A. Lewis*, for appellants.

The court was in error both in its assumptions of fact and in its conclusions of law.

I.—1. No chain of title is shown for defendants from the Lacroix claim. The proof originates their title and possession with Thomas J. Payne in 1839. As the twenty-year limitation law was in force at the commencement of this suit in 1858, the defendants thus show no available title in themselves from any source : nor do they make the Lacroix claim available as an outstanding title; for an outstanding title, to be available as a defence, must be such as would support an action of ejectment. But the last actual possession under the Lacroix claim shown anywhere in the evidence is that of Lacroix himself, in 1804. Such a claim of title is expressly barred by the statute. (R. C. 1845, p. 715, § 1.)

2. The survey of the out-boundary of the commons had nothing whatever to do with the western line of the *cul de sac* common fields, or any other interior line of the commons. Nowhere do these lines coincide or meet each other.

3. Brown's survey of the out-boundary not undertaking, nor even authorized, to fix the locality of the *cul de sac* common fields, not making any connection with them at any point, and only introducing them by way of diagram upon the plat, there cannot of course exist any conflict between the respective surveys of these two different localities ; nor can

the former sustain or prove the validity of survey No. 164.

4. The lease itself from the City of St. Charles to plaintiffs shows that the title of the latter originated in 1831.

II.—1. The office of a survey is not to supersede the original grant, but merely to ascertain its locality. It can neither enlarge nor diminish the rights of grantees; and in as far as it assumes to do either, it is null and void. The survey No. 164 making a parallelogram of 324 arpens, must therefore succumb to the grant of a wedge-shaped figure, whose boundary lines, by the simple rules of arithmetic, can only contain 162 arpens. (Ott v. Soulard, 9 Mo. 581, 603; Boyce v. Papin, 11 Mo. 25; U. S. v. Huertas, 8 Pet. 475; U. S. v. Levi, 8 Pet. 481–2; U. S. v. Huertas, 9 Pet. 171; Smith v. U. S. 10 Pet. 326, 331; U. S. v. Forbes, 15 Pet. 173, 182; U. S. v. Breward, 16 Pet. 146; Orrick v. Bower, 29 Mo. 210; Kissell v. Pub. Schools, 16 Mo. 586; Jourdan v. Barrett, 13 La. 43; Kittridge v. Landry, 2 Robinson, La. 78.)

True, as to this point, there is sometimes a distinction between the recognition, by way of grant or confirmation, of an existing claim, and an original grant coupled with a condition that it is to be located by future survey. In the latter case only the survey is conclusive. But the commons grant, under the act of 1812, belongs to the former and not to the latter class. (Magwire v. Tyler, 25 Mo. 484; Dent v. Sigerson, 29 Mo. 513; Carondelet v. St. Louis, 25 Mo. 448, 460–62 S. C.; 1 Black., U. S. 187.)

Even in cases where the survey is conclusive as between the United States and the grantee, it is not so as to third parties (as the plaintiffs in this case), who are not estopped thereby. (Menard v. Massey, 8 How. 293, 314.)

The survey of the out-boundary could have no effect whatever upon the lines of the claims lying within it. Its only object and effect were to sever the confirmed claims "in a mass" from those lying without it. (Mackey v. Dillon, 4 How. 446; Milburn v. Hortiz, 23 Mo. 532–8; Tayon v. Hardman, 23 Mo. 539–43; Schultz v. Lindell, 24 Mo. 567–70; Kissell v. Pub. Schools, 16 Mo. 587.) And yet the fourth

instruction given for defendants assumes as a *fact proven* that this survey verifies survey 164, and that the acceptance of one binds the city and its grantees to the other.

2. The act of June 13, 1812, was a conclusive grant of the commons as they then existed, with no reservation or condition as to any future survey; and no authoritative survey shows how or where they then existed, with reference to the interior lines, other than the Spanish survey of Mar. 2, 1804. (Glasgow v. Hortiz, 1 Black., U. S. 595; see also authorities above cited.)

III. The alleged estoppel against plaintiffs had no foundation in fact or in law: Because,

1. The evidence shows that the plaintiffs' title from the city arose long prior to the assumed acts of acceptance of the survey on the part of the latter.

2. The plaintiffs were in no sense parties, nor was the city corporation, to the survey of the Lacroix claim, and therefore could not be estopped by it.

3. The survey of the out-boundary not affecting the line in controversy, neither the city nor its grantees could, by any acceptance of that survey, be estopped touching the line in controversy.

4. The defendants are not authorized to set up the alleged estoppel, since they show no short of connection in themselves with the subject matter; not showing title in themselves under the United States, and not being parties or privies to the alleged acts of estoppel. (Cottle v. Sydnor, 10 Mo. 763.)

IV. The instructions given for defendants are all erroneous, as inconsistent with the foregoing propositions. The first instruction assumes the acceptance of the survey of the out-boundary by the city as a fact proven. The second instruction affirms the acceptance as a conclusion of law, when it ought to have been left as a question of fact for the jury to decide. (Carondelet v. McPherson, 20 Mo. 205.) The fourth instruction is erroneous in assuming the application of the survey of the out-boundary to the land in controversy, and

the acceptance thereof by the city, as affecting the boundary lines involved in this suit.

*Whittelsey*, for respondents.

I. The confirmation of a lot by the act of June 13, 1812, although within the commons, vests the title in the confirmee as against the inhabitants of the town. The act does not confirm as commons all land within the out-boundaries of the survey, but only such part as was commons on the 20th December, 1803. Land previously granted, or lots inhabited, cultivated, or possessed, as private property, remained such; and if an out-lot, or common-field lot, was confirmed as private property. (Page v. Schiebel, 11 Mo. 167; Soulard v. Allen, 18 Mo. 590; St. Louis v. Toney, 21 Mo. 243; Harrison v. Page, 16 Mo. 182; Macklot v. Dubreuil, 9 Mo. 473; Boyce v. Papin, 11 Mo. 16; McGill v. Somers, 15 Mo. 80; Guitard v. Stoddard, 16 How. 494.

II. The official survey No. 164 is a part of the confirmation, and is *prima facie* evidence of the location of the lot as cultivated and possessed.

*a.* The confirmation is according to cultivation and possession, and not according to grant. (Authorities above cited; Janis v. Gurno, 4 Mo. 458; Guitard v. Stoddard, 16 How. 494; McGill v. Somers, 15 Mo. 80.)

*b.* The survey conforms to the lines of the neighboring lots in the *cul de sac* common fields, and was made according to the possession. (Authorities cited above.)

*c.* The survey of the lot made in 1796 calls for 324 arpens, and as the tract was 36 arpens deep, that made a lot of $9 \times 36$ arpens, in a rectangular form, corresponding with the adjoining lots, and has been so surveyed by the United States, first in 1817, and then by Brown in 1844. (Act Cong. Ap. 29, 1816; 1 Land L. 278; act May 26, 1824; 1 Land L. 397, § 2, and authorities above cited.)

III. The patent certificate with the survey attached is *prima facie* evidence that the land embraced within the survey was a common-field lot, and that it was cultivated and

possessed as such prior to Dec. 20, 1803; and the defendants being in possession, the burden of proof was upon the plaintiffs to show that the survey did not correctly locate and define the boundaries of the land confirmed. (McGill v. Somers, 15 Mo. 80–87; Soulard v. Allen, 18 Mo. 590, 596–7; St. Louis v. Toney, 21 Mo. 243, 252; act Apr. 29, 1816, 1 Land L. 281, § 3; act May 26, 1824; 1 Land L. 398, § 3.) This was the whole effect given to the certificate by the defendants' instructions.

The defendants further brought themselves within the case of Vasquez v. Ewing, 24 Mo. 31, by proving the actual possession and cultivation prior to Dec. 20, 1803.

IV. The lease under which plaintiffs claim title, made in 1856, is so defective in its description of the premises conveyed, that it must almost be considered as void for uncertainty of description. (Bell v. Dawson, 32 Mo. 79.) At any rate, the burden of proof was upon the plaintiffs to show that their deed embraced the *locus in quo*, and this warranted the fifth instruction given for defendants.

V. The official U. S. survey of the commons, upon which the *cul de sac* fields were laid down in the locality claimed by defendants to be correct, was *prima facie* evidence that said fields were correctly located; and if the Town of St. Charles had assented to and accepted said survey prior to the date of plaintiffs' deed in 1856, it is conclusive upon the town and all claiming under them after said acceptance. (Carondelet v. St. Louis, 29 Mo. 527, S. C.; 1 Black. 179; Carondelet v. McPherson, 20 Mo. 192.) The evidence shows that the town had assented to and accepted the United States survey, which included more land than Soulard's survey in 1804.

VI. The survey of Soulard was but a private survey, not a public official survey, as it was made after the change of government. (Act Cong. Feb. 28, 1806; 1 Ld. L. 133, § 3.) The grant of Delassus made in 1804 was void as a grant, having been made after the change of government, Ap. 30, 1803. (Act Mar. 20, 1804; 1 Land L. 114, § 14.) The instructions asked by plaintiffs in relation to the effect of Soulard's

survey were therefore correctly refused.  At the date of the
trial of Chouteau v. Eckert, 2 How. 344, Brown's U. S. sur-
vey had not been made, and there was no dispute as to the
correctness of Soulard's survey by Chouteau's claiming un-
der the act of July 4, 1836.

HOLMES, Judge, delivered the opinion of the court.

The defendants were in the actual possession of the land
in controversy, and gave evidence of a possession of long
standing, under a claim of title. There was no evidence that
the plaintiffs, or those under whom they claimed, ever had
been in the actual possession of the land sued for; they de-
pended solely upon a right to the possession resulting from
superior title.

At the close of the evidence, the plaintiffs asked the court
to instruct the jury (among other things), " that the acts of
Congress of the 13th of June, 1812, and the 27th of January,
1831, confirmed to the inhabitants of the town of St. Charles
and vested in them the legal title to their commons as claim-
ed by them and spread upon the records of the Government,
and that the survey of the said commons made and certified
prior to the 10th day of March, 1804, by the proper officer,
is *prima facie* evidence of the true location, extent and
boundary of said commons"; which instruction the court re-
fused.   One of the instructions, given at the instance of the
defendants, declared that "although the jury may find from
the evidence that Evans' survey of lots Nos. 14 and 20 of
block 4, as claimed by plaintiffs, runs into and interferes with
approved U. S. survey No. 164, given in evidence by defend-
ants, yet unless plaintiffs have shown title to the interference
now in controversy they cannot recover in this action."

These instructions raise the question whether, upon the
evidence before the jury, the plaintiffs had shown any title to
the land in controversy.  The only evidence of a title to com-
mons in the Town of St. Charles, under whom the plaintiffs
claimed, that appears in this record as a basis for the in-
structions which were asked by the plaintiffs, was the plat

and certificate of survey of the commons of the town of St.
Charles by Antoine Soulard, the Spanish surveyor, dated
March 2, 1804 ; and the purport of that instruction for the
plaintiffs must be taken to be, that said survey was not only
evidence of " the true location, extent and boundary of said
commons," but also of the fact that a right, title and claim
to commons with that definite extent and boundary had
existed in the Town of St. Charles prior to the 20th day of
December, 1803, on which the act of Congress of the 13th of
June, 1812, operated as a grant of title. It has been decided
that the act of Congress and an approved official survey by
authority of the United States were equivalent to a patent
of the tract of land so surveyed as commons. (Le Bois v.
Brammell, 4 How., U. S. 449.) But no such effect can be
given to the survey of Soulard, made before the act was
passed, even if it could be considered as having been made
by Spanish authority before the change of government. As
such, it could only be used as evidence to prove the fact,
that prior to the 20th day of December, 1803, a right, title
and claim to commons had existed in the Town of St. Charles
with the extent and boundary therein designated, on which
the act of Congress could operate as a grant of title. As a
survey merely, it speaks from the date of its completion.
The act of Congress did not purport nor intend to confirm a
claim to commons which existed only on the 2d day of March,
1804, but only such commons as existed in fact prior to the
20th day of December, 1803.

This survey and certificate were admitted in evidence with-
out objection, and we have only to consider the effect of it as
evidence. The certificate of Soulard cannot be allowed to
speak as a deposition of a witness as to extraneous matters
recited in it; nor, if it could, does it contain any statements
of fact from which a jury would be warranted in inferring
that a right, title and claim to commons had existed in fact
prior to the 20th day of December, 1803, and with the extent
and boundary mentioned in the plat and certificate. It cer-
tifies only that a tract of land was surveyed and bounded, in

presence of the syndic and inhabitants of St. Charles, as represented in the plat, according to their petition therefor, dated Jan. 18, 1801 (the nature of which is not stated), and the decree of the Lieut. Governor by which he was "ordered to put them in possession of a sufficient quantity of land to serve them as common," which survey being completed now on the 2d day of March, 1804, shows a tract containing 14,000 arpens of land with the boundaries described; and it is further said that the survey had been made in conformity with the decree of the late Lieut. Governor dated the 26th of February, 1801, and that the whole had been laid down from the field notes of his deputy dated the 27th of February, 1804. The inference to be drawn from all this is, that no definite tract of land had existed as a common, or been claimed or possessed by the inhabitants of the town, until this survey was completed; though it would appear that he had previously obtained authority to survey, designate and put them in possession of a sufficient quantity of land to serve them as a common.

In the absence of any official survey of commons by authority of the United States, the only way in which a title to commons under the act of Congress of the 13th of June, 1812, can be shown is by proof of some grant, concession, survey, or actual possession, claim, or user, of some definite tract of land as commons prior to the 20th day of December, 1803. Without such evidence, there can be no title to commons, under that act, where no official survey is shown.

In Chouteau v. Eckert, 2 How. (U. S.) 344, several documents were in evidence tending to show an actual concession, claim, and possession of commons, with the definite extent and boundary, which were afterwards accurately marked by the survey of Soulard, and that the commons of the town had been enclosed by a fence as early as 1798, including the lot in controversy in that case; and the court said, "the whole of the claim is included in the village common of St. Charles as it existed on the 20th day of December, 1803." The St. Charles common was indirectly alluded to in Caron-

delet v. St. Louis (1 Black. 189), in which it was remarked that this common "had been accurately and carefully surveyed and the boundaries marked by Soulard, the Spanish surveyor" (2 How. 350), and that "no question of boundary was involved in the controversy" in that case (Chouteau v. Eckert). This was true; but the observation must be understood, of course, as made in reference to the actual proofs shown in that case, and it will not warrant the assumption that the court intended to place this survey of Soulard on an equal footing with an official survey by authority of the United States, expressly made as a survey of the commons which was granted by that act.

In the case of Bird v. Montgomery, 6 Mo. 510, documentary evidence of like character was introduced (together with the survey of Soulard) clearly showing an actual claim and concession of commons existing in fact as early as 1801, with the definite boundaries afterwards designated by the survey. It was insisted by the defendant in that case, "that the act of 1812 operated to confirm the titles of claimants only when there was a grant from the Spanish Government, or such long use and enjoyment of a specific quantity of land as would amount to a grant." The court held this position to be correct, if the word *grant* were understood to include inchoate titles and concessions, and all such rights, titles and claims as were the subjects of the act of Congress; and it was added, that "in this case there was not only a claim to an indefinite quantity of land as far back as 1796, and which was recognized by the proper authorities of that day, but a more distinct and definite claim set up in 1801, and expressly conceded by the proper officer so far as he had authority to make such a concession." The documents that appeared in evidence were considered as having fixed and established the claim to commons with definite boundaries as a right, title and claim existing prior to 1803, as it was also actually surveyed by Soulard before the transfer of Upper Louisiana in 1804; and as such claim so proved, it was held to have been confirmed by the act. It is clear that this conclusion

was based upon the actual proof of an existing commons prior to 1803, and not merely upon the survey of Soulard dated in 1804. It was further said, that the evidence offered was sufficient to show an actual user of commons of an indefinite extent as far back as 1776, and that "in 1801 the claim and the user were reduced to certainty by a petition containing a special description by metes and bounds, and a consequent survey in 1804." But it is not to be inferred that the survey alone was considered as being any evidence of such user or claim prior to the 20th day of December, 1803.

The conclusion must be that there was no evidence before the jury, in this case, of any title whatever to commons in the Town of St. Charles at the date of the plaintiff's lease. It follows that there was no error in the ruling of the court upon the instructions in question; and, indeed, that the only instruction that could properly have been given, would have been to the effect that the jury should find for the defendants.

It was not claimed on the part of the plaintiffs that the survey and plat of the out-boundary line of the town of St. Charles, under the act of 13th June, 1812, was a survey of the commons, or any evidence of the location, extent and boundary of the commons ; though some of the defendants' instructions affected to treat it as such, and as a survey of the private lots marked on the plat. It can hardly be necessary to say, that this was no survey of any tract of land for the land as commons, or for an individual as a private lot. (Kissell v. Schools, 16 Mo. 587 ; Glasgow v. Hortiz, 1 Black. 595.)

There is no occasion that we should proceed to review in detail the numerous instructions that were given or refused on either side. In reference to those which related to the defendants' title by the certificate of the U. S. Recorder of land titles, on proof made before Recorder Hunt under the act of 26th of May, 1824, and a survey thereon, it may be observed, that until the plaintiffs can show some title in themselves to the land in controversy, they will not be in a position to question or dispute the *prima facie* title shown by those documents, however erroneous that survey may have

been; upon which we are not now called upon to express any opinion. It is, at least, conclusive upon the Government while it stands as a survey, and upon all mere intruders and strangers without any title to the same land. (McGill v. Somers, 15 Mo. 80.)

Judgment affirmed. The other judges concur.